

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-28-2008

# Ping v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3975

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Ping v. Atty Gen USA" (2008). *2008 Decisions.* Paper 612.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/612

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3975
_____

QIU PING,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A 96 208 766)
Immigration Judge:  Honorable Miriam K. Mills

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 27, 2008

Before: SLOVITER, STAPLETON and COWEN, Circuit Judges

(Opinion filed: August 28, 2008)
_____

OPINION
_____

PER CURIAM

Qiu Ping, a citizen of China, seeks review of the order of the Board of Immigration

Appeals ("BIA") affirming the order of removal by the Immigration Judge ("IJ").  For the

reasons that follow, we will deny the petition for review.

Ping entered the United States in April 2004 without a valid entry document and was charged with removability on that basis; he conceded the charge of removability. Because he expressed fear of returning to China, he received a credible fear interview in May 2004. Ping applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). In support, he submitted a statement and other documents, including a letter from his father.

At his credible fear interview, Ping alleged that government officials came to the family home and destroyed the door and other property because the family's taxes were unpaid. He noted that his family could not afford to pay the taxes. Ping further noted that he was attacked by "local individuals" because his father owed them money. When asked whether the local individuals were connected with the government or the police, Ping initially indicated that they were not, but later clarified that they had connections insofar as their wealth enabled them to avoid problems with the authorities. Ping stated that he feared returning to China because of the repercussions he would face for having left China illegally.

In his asylum application, Ping restated his claim that his family was a target of government collection officials because of the family's tax debts. He noted that in August 2002, he was dismissed from school for failure to pay school fees. In April 2003, tax enforcement officials came to his family's house and forcibly took property. Ping stated that he tried to reason with the officials, but the officials later sought to prosecute

2

him, forcing him to go into hiding and to flee the country.

The IJ held an evidentiary hearing, at which Ping testified. Ping stated that his family owed agricultural taxes and that his parents could not afford to pay them, and because the family did not respond to a notice to pay in full or else face an additional fine, officials came to the house in April 2003. When asked by the IJ how he was harmed for not paying taxes, Ping testified that the officials who came to the house beat him and his parents, attempted to inflict punishment through court rulings, and beat him and his parents a second time. Ping further stated that his parents were arrested and detained for one week. Ping also testified regarding his expulsion from school for failure to pay the school fees, which were paid together with the agricultural taxes.

When asked why his father did not mention the beatings in his letter submitted in support of the asylum application, Ping replied that he did not know the reason. When asked to explain his statement in his credible fear interview that he was beaten by local individuals but was not directly attacked by the government, Ping indicated that those individuals worked for the government. When asked to explain why that assertion was not presented in his written application, Ping indicated that the facts in his application were described generally.

The IJ found that Ping was not credible, denied all relief, and ordered Ping removed to China. The IJ cited the inconsistencies between Ping's written application statement, his credible fear interview, and his testimony. Specifically, the IJ relied on

3

Ping's inability to reconcile his testimony that he and his parents were beaten by the authorities with his written statement and credible fear interview that omitted mention of those beatings. The IJ also noted that the letter from Ping's father also failed to mention the beatings. Further, the IJ found that even if Ping testified credibly concerning the government's confiscation of family property and expulsion from school as a result of the family's failure to pay taxes, such harm did not rise to the level of persecution. In conclusion, the IJ found that Ping failed to establish any imputed political opinion based on the family's inability to pay taxes, that Ping's testimony regarding any government involvement in assaults on the family was incredulous, and that the harm suffered did not amount to torture within the meaning of the CAT. The BIA affirmed without opinion. Ping has filed a petition for review of the agency's final decision.

We have jurisdiction to review the agency's final order of removal under 8 U.S.C. § 1252(a). Because the BIA affirmed the IJ's decision without opinion, we review the IJ's decision and reasoning. See Chen v. Gonzalez, 434 F.3d 212, 216 (3d Cir. 2005). Our review is for substantial evidence, that is, "[w]e will defer to and uphold the IJ's adverse credibility determinations if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole,' but such findings must be based on inconsistencies and improbabilities that 'go to the heart of the asylum claim.'" Id.

(quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)) (internal citation omitted).[1]

We must affirm "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (citations omitted).

Ping challenges the agency's determination that he was not credible and maintains that his testimony was consistent in the relevant details. In support, Ping states that his responses during his credible fear interview regarding the beatings by local individuals are consistent with his hearing testimony that those individuals worked for the government. Ping bases this assertion on his interview statements indicating that the individuals had connections with the government and wielded power due to their wealth. We are not persuaded by Ping's arguments, as they rely on a selective interpretation of his interview responses. Taken in context, Ping's responses indicate that the individuals responsible for the beatings were "individuals who [his] father owed money to," and that they were not connected with the government. (A.R. 273.) That is, Ping's responses do not compel the interpretation that the individuals were private contractors working as government collection agents, as suggested in Ping's hearing testimony and as argued in his brief. Further, no beatings–whether by private individuals or by government officials–are mentioned in Ping's written asylum application statement. Moreover, Ping's

---

[1] Under the REAL ID Act, an adverse credibility determination can be based on inconsistencies and other factors without regard to whether they go to the heart of an applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii). Ping applied for asylum before May 11, 2005, and therefore the REAL ID Act's new standard for credibility determinations does not apply to him. Chukwu v. Attorney Gen., 484 F.3d 185, 189 (3d Cir. 2007).

father's letter does not corroborate his testimony that he and his parents were beaten because the letter omits any reference to those beatings. These discrepancies directly impact Ping's claim of government persecution.

We conclude that the adverse credibility finding was based on specific reasonable and substantial evidence supported by the record.[2] Finally, regarding his CAT claim, Ping has not shown that the agency erred in concluding that he did not make the requisite showing that it is more likely than not that he would be tortured if he returns to China.

We will deny the petition for review.

---

[2]Because we conclude that substantial evidence supports the adverse credibility finding, we need not address the agency's alternative conclusion that, even if credible, Ping did not satisfy his burden of proof on the substance of his asylum and withholding of removal claims. However, we note that Ping argues in his brief that he was persecuted on account of a political opinion (refusal to pay taxes, rather than an inability to pay taxes) by private actors that the government was unwilling or unable to control. It does not appear from the record that Ping ever presented this theory for asylum eligibility during the agency proceedings, and in any event, the record does not show that Ping established eligibility on that basis.